**JUVENILE CAUSES**

**RESTRICTIONS ON PUBLIC ACCESS TO JUVENILE FACILITIES**

September 24, 1993

*The Honorable Barbara H. Hoffman*
*Maryland Senate*

You have requested our opinion on several issues related to access by members of the public to the Charles H. Hickey, Jr. School and other facilities of the Department of Juvenile Services. These issues are as follows:

1.      Is the Department prohibited by §3-828 of the Courts and Judicial Proceedings Article, Maryland Code ("CJ" Article) from allowing members of the public to enter a juvenile facility?

2.      If there is no such prohibition, are there other provisions of law affecting the authority of the Department to deny members of the public access to a juvenile facility?

3.      Does the Open Meetings Act entitle members of the public to attend a legislative committee meeting held at a juvenile facility?

For the reasons stated below, we conclude as follows:

1.      CJ §3-828 does not prohibit the Department of Juvenile Services from admitting members of the public to juvenile facilities.

2.      Under its governing statute, the Department has the authority to deny members of the public access to juvenile facilities.

3.    The Open Meetings Act does not require the Department to admit members of the public to a juvenile facility.  If the Department chooses to exercise its discretion to exclude members of the public from a facility, the Open Meetings Act would require a legislative committee to hold an open meeting elsewhere.

# I

## Background

Your inquiry arises out of events surrounding a visit by the Joint Oversight Committee on Juvenile Services Initiatives to the Charles H. Hickey, Jr. School on August 17, 1993.  The Committee viewed this site visit as a meeting and published notice of it in the public hearing schedule of the General Assembly.

At the invitation of the Committee, three members of the public who were not affiliated with the General Assembly came to Hickey that day to observe the site visit.  Although the Committee members and staff were permitted to enter the facility, the Department refused entry to the three members of the public.  The Department acted on the view that it was required by CJ §3-828 to deny admittance to members of the public and, even if it were not so required, it would exercise its management prerogative over the facility to do so.

# II

## Confidentiality Requirement

CJ §3-828 deals with the confidentiality of juvenile records.  With an exception not pertinent here, "[a] police record concerning a child is confidential and shall be maintained separate [*sic*] from those of adults.  Its contents may not be divulged, by subpoena or otherwise, except by order of the court upon good cause shown."  CJ §3-828(a).  Likewise, "[a] court record pertaining to a child is confidential and its contents may not be divulged, by subpoena or otherwise, except by order of the court upon good cause shown."  CJ §3-828(b)(1).  The term "record" is not defined for purposes of the Juvenile Causes Subtitle, Subtitle 8 of CJ Title 3.

In an earlier opinion, this office expressed the view that CJ §3-828 should be construed broadly in order to serve the remedial purposes of the Juvenile Causes Subtitle:

> The confidentiality provisions of CJ §3-828 clearly are intended to remove the "taint of criminality" from persons who have been adjudicated delinquent children and to promote the rehabilitation of those persons. In our view, those provisions are also intended to protect and to promote the rehabilitation of children who come within the ambit of the juvenile court, but who are not adjudicated delinquent.

69 *Opinions of the Attorney General* 165, 168-69 (1984). Applying that policy, the Attorney General concluded that the term "juvenile court records" should be construed to extend to related records of what is now the Department of Juvenile Services. 69 *Opinions of the Attorney General* at 174.

We do not disagree with either the premise or the conclusion of the 1984 opinion. Thus, we believe that the Department is prohibited by CJ §3-828 from releasing a list of the names of those children who are residents at a juvenile facility. Likewise, the Department is prohibited from confirming or denying that a particular child is a resident. Were the Department to do so, it would divulge the "contents" of its "records," in contravention of the statute.

The leading legal dictionary defines "record" to mean "[a] *written* account of some act, court proceeding, transaction, or instrument, drawn up, under authority of law, by a proper officer, and designed to remain as a memorial or permanent evidence of the matters to which it relates." *Black's Law Dictionary* 1273 (6th ed. 1990) (emphasis added). *Accord, Random House Dictionary of the English Language* 1612 (2d ed. unabridged 1987). The term "contents" refers to the information contained in the record. *Areizaga v. Quern*, 442 F. Supp. 168, 173 (N.D. Iowa 1977), *aff'd*, 590 F.2d 226 (7th Cir. 1978) (regulatory term "contents of his case file" means "materials in the file").

Other provisions within CJ §3-828 suggest that the General Assembly used the terms "record" and "contents" in their conventional sense. The statute speaks of the "seal[ing]" of court records, hardly a term that could be applied to anything other than written materials. Moreover, a provision dealing with access to juvenile records for criminal justice research purposes states that such records "may not contain the name of the individual to whom the record pertains, or any other identifying information which could reveal the individual's name." CJ §3-828(f). These references within the statute lead us to conclude that the term "record" was intended to be understood in its conventional sense.[1]

A related court rule, Rule 921, also suggests that the statutory term "record" is used in its conventional sense. Rule 921a provides that "[f]iles and records of the court in juvenile proceedings, including the docket entries and indices, are confidential and shall not be open to inspection except by order of the court."

In our opinion, the Department would divulge neither the "record" of a juvenile nor the "contents" of a record were it to admit a member of the public to a juvenile facility. To be sure, the Department would thereby allow the visitor to observe the facial and other physical characteristics of the children whom the visitor happens to see, but merely by affording such access the Department does not disclose the name of any child or otherwise provide information from the child's record. The physical features of a child are observable facts that exist independently of the "contents" of a "record"; so does the potential ability of a visitor to recognize a child, based on the visitor's prior knowledge.

This construction of CJ §3-828 is bolstered by cases interpreting a federal statute on the confidentiality of records of drug abuse treatment. This statute, codified at 42 U.S.C. §290ee-3, provides in pertinent part that "[r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in

---

[1] In an opinion describing the background to the confidentiality requirements concerning juvenile records prior to the enactment of the Courts Article, the Attorney General quoted a study report that presented "the case for 'confidentiality' of juvenile petitions, probation officer reports, social or clinical studies and related *documents* ...." 55 *Opinions of the Attorney General* 320, 321 (1970) (emphasis added).

connection with the performance of any drug abuse prevention function ... [are] confidential ...." 42 U.S.C. §290ee-3(a). In *State v. White*, 169 Conn. 223, 363 A.2d 143, *cert. denied*, 423 U.S. 1025 (1975), the defendant was charged with violating the terms of his probation, one of which was that he obtain treatment for drug abuse. The defendant sought to exclude testimony of a drug abuse counselor regarding the defendant's elopement from Daytop, a residential treatment center, on the ground that this testimony was an improper disclosure of a "record" of the defendant's drug abuse treatment, in violation of the federal law. The Connecticut Supreme Court rejected this argument:

> [The counselor] testified that his testimony was not based upon a review of the probationer's records. He was not asked any particular questions requiring information from the records, nor were these records produced or offered for introduction into evidence in court. He testified directly that he had seen the defendant at Daytop and that the defendant left Daytop without permission. A counselor's direct personal observations of the defendant's absence in violation of the terms of his probation are not a "record ... maintained in connection with the performance of any drug abuse prevention function."

363 A.2d at 150. *Accord, State v. Brown,* 376 N.W. 2d 451, 453 (Minn. Ct. App. 1985) ("[a] counselor's direct personal observations are not a 'record'"). In our view, the Maryland courts would apply the same reasoning to the construction of CJ §3-828.[2]

---

[2] *Westfall v. State*, 243 Md. 413, 221 A.2d 646 (1966), is not to the contrary. In that case, a prosecutor asked an adult criminal defendant whether he had ever been in the Maryland Training School, a juvenile facility. The Court of Appeals held that the question was improper because it indirectly elicited information about the defendant's prior juvenile record, in violation of the prohibition against "attack[ing] the credibility of a witness by directly asking him about his past record of juvenile offenses." 243 Md. at 423. The case does not stand for the

(continued...)

The application of CJ §3-828 to the circumstances under which someone might observe a child would lead to results that are not likely to have been intended by the General Assembly. If CJ §3-828 were construed to mean that only those who are identified in that section could have access to a juvenile facility, then members of the General Assembly would be barred. We doubt that the General Assembly would have enacted a provision intended to cut off its own access to these important public facilities.

As we point out in the next part of this opinion, weighty policy arguments can be advanced for severe restrictions on public access to juvenile facilities. In our view, however, these policy considerations do not affect the scope of CJ §3-828. As we read it, that statute does not address access by members of the public to a juvenile facility.

### III

### Departmental Discretion

Under Article 83C, §2-117, the Department of Juvenile Services "may establish and operate the facilities that are necessary to diagnose, care for, train, educate, and rehabilitate properly children who need these services."[3] The Department is responsible for "the control and general management" of each facility. Article 83C, §2-118(a). In addition, the Department is authorized to "[o]rder any needed changes in policy, conduct, or management of a facility to provide adequate care for the children and adequate services to the courts." Article 83C, §2-118(b)(2). In our opinion, these provisions amply grant to the Department the authority to

---

[2] (...continued) proposition that a witness's testimony that the witness observed of a child at a juvenile facility is, in and of itself, a violation of the confidentiality requirement of CJ §3-828.

[3] Among the facilities specifically authorized by this provision is the Charles H. Hickey, Jr. School. Article 83C, §2-117(a)(2)(ii).

establish a policy governing visits to a facility.[4]  *See Holdman v. Olim,* 581 P.2d 1164, 1170 (Haw. 1978).

In considering the issues raised by public access to its facilities, the Department is surely entitled to weigh not only security considerations but also confidentiality concerns.  That is, although we have concluded that CJ §3-828 does not itself bar access to facilities by members of the public, the Department is entitled to consider whether even limited public access would risk compromising the anonymity of the children at the facilities.

We also recognize competing policy considerations that the Department ought to take into account as well.  The General Assembly surely has a compelling interest in oversight of juvenile facilities and might legitimately regard the assistance of some members of the public to be integral to its oversight role.  More generally, as this office observed in a somewhat different context, "[t]he agencies involved have no privacy interests to be protected; on the contrary, the public interest requires that they be held accountable for their performance, like any other part of government.  And true accountability depends, in turn, on some degree of public scrutiny of their performance."  71 *Opinions of the Attorney General* 368 (1986).

It is not for an Attorney General's opinion to resolve these competing policy considerations.  We do conclude, however, the Department has the legal authority to resolve them and, if it determines that severe restrictions on access to a facility by members of the public are necessary for the "control and general management" of a facility, the Department may impose those restrictions.

---

[4] That the Department has entered a contract with a private corporation to operate the Hickey School does not divest the Department itself of its authority or responsibility.  An agency may not contract away its statutory obligations.  *See* 73 *Opinions of the Attorney General* 295, 302 (1988).

**IV**

**Open Meetings Act**

If a committee of the General Assembly or other "public body" holds an open meeting, "the general public is entitled to attend." §10-507(a) of the State Government Article ("SG" Article). Open meetings "shall be held in places reasonably accessible to individuals who would like to attend these meetings." SG §10-501(c). The public body holding the meeting has the responsibility of selecting a suitable meeting site:

> When the public body is considering where to meet, it should choose a room large enough to accommodate those members of the public and the press who are expected to attend. The location should be as convenient as possible for public attendance.... And the room should be accessible to members of the public with disabilities.

Office of the Attorney General, *Open Meetings Act Manual* 15 (1992).

When the Department of Juvenile Services has exercised its discretion under Article 83C, §2-118 to restrict members of the public from entering a juvenile facility, that facility would then not be a suitable place for a legislative committee to hold an open meeting. The Act does not prevent the Department from exercising its discretion in that way; the Open Meetings Act simply does not address the Department, which is not a "public body." *See* SG §10-502(h). Rather, the Act imposes a two-fold obligation on the committee under such circumstances: to refrain from holding a meeting – that is, "the consideration or transaction of public business," SG §10-502(g) – while in a closed facility; and, conversely, to hold its meeting at a site where members of the public can attend.

**V**

**Conclusion**

In summary, it is our opinion that:

1.      CJ §3-828 does not prohibit the Department of Juvenile Services from admitting members of the public to juvenile facilities.

2.      Under its governing statute, the Department has the authority to deny members of the public access to juvenile facilities.

3.      The Open Meetings Act does not require the Department to admit members of the public to a juvenile facility.  If the Department chooses to exercise its discretion to exclude members of the public from a facility, the Open Meetings Act would require a legislative committee to hold an open meeting elsewhere.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*